## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| ANTHONY SHANE SCOTT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-1370 |
| | ) | |
| FREDERICK ENTZEL, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER AND OPINION

**SARA DARROW, Chief U.S. District Judge:**

Now before the Court is Petitioner Anthony Shane Scott's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (d/e 1).  Petitioner Scott claims the Bureau of Prisons (BOP) has miscalculated his sentence and he is owed over two years of time credits for his pre-sentence custody.  The heart of the parties' dispute concerns whether the state of Arkansas relinquished its primary custody of Scott on December 11, 2014, when they allowed Scott to be arrested on his federal detainer without officially releasing him from his state parole revocation.  The BOP contends that Arkansas maintained primary custody until the conditional parole discharge was issued on January 3, 2017, and that no additional time credits prior to this date can be awarded pursuant to 18 U.S.C. § 3585(b).

For the reasons explained below, the Court finds that Arkansas did relinquish its primary custody on December 11, 2014, making Scott's federal sentence begin on the date he was sentenced, October 12, 2016.  This should result in Scott receiving roughly 84 additional days of credit towards his sentence from the period of October 12, 2016 to January 2, 2017.  But, pursuant to 18 U.S.C. § 3585(b), Scott still is not likely owed any time credits prior to the date

his federal sentence began if they were already credited towards his state sentence.  Accordingly, the Court GRANTS IN PART and DENIES IN PART Scott's § 2241 Petition.  Respondent is ORDERED to recalculate Scott's sentence as commencing on the date of his federal sentencing hearing, October 12, 2016, and apply any applicable presentence time credits.

## I. BACKGROUND

The Court summarized the relevant factual background in its April 19, 2021 Order (d/e 22), but, for clarity, it is worth recounting here with the added factual details that were provided in supplemental briefing.  Scott's current incarceration began when he was arrested by local law enforcement in Arkansas on March 31, 2014.  The state of Arkansas charged Scott with Criminal Attempted Murder in the First Degree, Possession of Firearms by Certain Persons, and Endangering the Welfare of a Minor in the First Degree in case number CR-2014-35-4.  On April 21, 2014, the Arkansas Department of Corrections (ADC) also revoked Scott's parole from an earlier conviction in Arkansas, case number CR-2002-210.  *See* Declaration of Kneyse G. Martin (Martin Decl.) ¶3 (d/e 7-1); Martin Decl. Attachments 3 and 4, Resp. App. 10-14 (d/e 7-2).  Scott signed a Waiver of Revocation Hearing on April 21, 2014, which stated that he would "be eligible to be considered for release again in: Nov 2014."  *See* Martin Decl. Attachment. 3, Resp. App. 10 (d/e 7-2).

On July 2, 2014, a federal indictment was filed in the United States District Court for the Eastern District of Arkansas, which charged Scott with being a felon in possession of a firearm. *See United States v. Scott,* 4:14-cr-00142-SWW (E.D. Ark.).  On July 14, 2014, the United States Marshals Service "borrowed" Scott from state custody on a federal writ of habeas corpus *ad prosequendum* to face these pending federal charges.  *See* Martin Decl. Attachment 6, Resp. App. 24-26 (d/e 7-2).  He was returned to state custody on July 16, 2014.  *Id.*  On December 8,

2014, Arkansas *nolle prossed* all pending charges against Scott in state case number CR-2014-35-4.  *See* Martin Decl. Attachment 2, Resp. App. 6-8 (d/e 7-2).

On December 16, 2014, the U.S. Marshal Service filed a Memorandum stating that Scott had been "taken into U.S. Marshal Service custody on a detainer from Fulton Co. Jail, Salem, AR" on December 11, 2014.  *See* Martin Decl. Attachment 7, Resp. App. 28 (d/e 7-2).  A federal arrest warrant that had been issued on July 3, 2014 was also filed on December 19, 2014 in Scott's federal case.  *See* Martin Decl. Attachment 8, Resp. App. 30 (d/e 7-2).  The executed arrest warrant stated that Scott had been arrested on the federal charges on December 11, 2014. *Id.*  Additionally, a "State of Arkansas Criminal Information," which was faxed from the Fulton County Sheriff's Office to Kneyse Martin (a Correctional Program Specialist at the BOP's Designation and Sentence Computation Center) on November 10, 2020, regarding Scott's state criminal case, *Arkansas v. Scott,* CR-2014-35-4, has "Release date 12-11-14" handwritten on the bottom of the document.  *See* Attachment 1 to Martin Decl., Resp. App. 3 (d/e 7-2 at 5).

During the next year and a half, Scott's federal pretrial criminal case proceeded with multiple changes of attorneys and several suppression hearings.  On April 14, 2016, Scott pled guilty to the federal charges.  *See United States v. Scott,* 4:14-cr-00142-SWW (E.D. Ark.), April 14, 2016 Text Entry (d/e 52).  During this time, no one, evidently, noticed that he had not been given a parole hearing and/or conditional parole release in his Arkansas revocation case.  Finally, on October 12, 2016, the Eastern District of Arkansas sentenced Scott to 110 months' imprisonment on the federal Felon in Possession conviction, and recommended that Scott receive credit for time served in federal custody on the offense.  *See* 14-cr-00142, Judgment, d/e 68.[1]

---

[1] In briefing, Scott at one point states that this sentence was ordered to be "consecutive."  *See* Motion to Dismiss at 4 (d/e 34).  However, neither the Judgment nor the sentencing transcript attached at d/e 34-1 indicate that the Judge ordered Scott's sentence to be served consecutive to any other sentence.  To the contrary, it does not appear that the district court was aware that there was another sentence currently being served.

After his federal sentence was imposed, Scott continued to be housed at the same location—the West Tennessee Detention Facility—for 84 days. *See* Martin Decl. Attachment 5, Resp. App. 24-26 (d/e 7-2). During this time, the BOP exchanged emails with the Arkansas Parole Board and the U.S. Marshals to determine what had happened with his state cases. Included below are the most relevant portions of these emails:

- On October 27, 2016, Laura Yancy of the United States Marshals Service writes in an email that was later forwarded to Arkansas Department of Corrections employees: "The BOP says he is to serve his state time first. Can you check on this? Fulton Co. called us to pick him up on our detainer on 12/11/14. But he should have gone to ADC ?"

- On October 31, 2016, Shelli Maroney-Hamilton of the Arkansas Department of Corrections responds that the Arkansas Parole Board Chairman "says that the 110 months he received with the Feds will outrun his discharge date on his [Arkansas] sentence therefore, he can serve his Fed time and [Arkansas] will leave revocation as it is and let him discharge his sentence while in BOP custody."

- On October 31, 2016, two BOP employees (Sharon Dyer and Miranda David) wrote to each other and determined that this solution would not work: "He needs to be returned to ADC. It does appear they revoked him however the PSR does not reflect a term. If in fact he received a 6 month term, ADC should be able to provide a parole certificate that reflects parole on or about 10-21-2014."

*See* Supp. Resp., Attach. 6 (d/e 25-1).  Finally, after the BOP insisted, the ADC issued a

certificate indicating that Scott was re-paroled effective January 3, 2017.  *See* Supp. Resp.,

Attach. 11 (d/e 25-1 at p.40).

Also included in the record is a document from the ADC titled "Admission Summary,"

which includes the following relevant notes on Scott during this time period:

- January 13, 2015: "Subjects' Attempted Murder charge (2014-35) was
  nolle prossed 12-8-14. Subject still has parole revocation active."

- July 16, 2015: "Placed on inactive.  Per e-mail from intake inmate is at the
  Feds."

- October 31, 2016: "Inmate has been in US Marshall custody since Ar
  parole revocation and on 10/12/16 he received 110mth sentence in the
  FEDS.  Per John Felts, he can serve his revocation and discharge date out
  in BOP custody."

- January 3, 2017: "Placed back on active so I can do the parole release
  moves."

*See* Supp. Resp., Attachment 13 (d/e 25-1 at p. 53).  Another ADC document titled "Status

Assignment Sheet" states on December 5, 2016 there was an event type called "TE Violator

Screening" moving "transfer to ACC Supervision to Detainer."  *See* Supp. Resp., Attach. 12 (d/e

25-1 at p. 46).

The BOP then calculated Scott's federal sentence.  It determined that Scott was in the

primary custody of Arkansas until January 4, 2017, and that no prior custody credits could be

awarded pursuant to 18 U.S.C. § 3585(b).

After the BOP calculated his sentence, Scott filed administrative remedies with the BOP objecting to the lack of presentence credit he given. After further emails between the BOP and ADC in April 2019, the BOP determined that Scott was due time credits from the date of his state arrest on March 31, 2014 until his parole revocation on April 24, 2014. *See* Resp. Attach. 16 (d/e7-2 at 60). At this time, the ADC employee noted her understanding that "He was revoked back in 2014 but never came into ADC because of the Federal hold and then *Feds had him in custody*. Finally 1/4/2017 the parole board decided to grant him parole again. This is not the normal procedure. Usually on a 6 month revocation the inmate has to come into ADC to be granted parole again." *Id.* (emphasis added).

Scott then filed this Petition (d/e 1) in October 2020. The procedural posture of this case is also a bit complicated—though not nearly as complicated as his custody statuses. After Respondent responded (d/e 7) and Scott replied (d/e 20), the Court reviewed the case and ordered supplemental briefing on the issue of whether Arkansas retained primary custody. *See* d/e 22. Respondent filed a supplemental response with additional records. *See* d/e 25. Prior to Scott filing his reply, the Court granted Scott's renewed request for counsel. *See* d/e 29; July 1, 2021 Text Order. Counsel, however, filed a motion to dismiss. *See* d/e 34. The Court then ordered another round of supplemental briefing, asking the parties to address whether the Seventh Circuit's decision in *Pope v. Perdue*, 889 F.3d 410 (7th Cir. 2018), is applicable to this case. Respondent argues that *Pope* does not apply here. *See* d/e 35. Scott, through his attorney, now argues that it does. *See* d/e 36. This order now follows.

## II. DISCUSSION

Scott claims that the BOP incorrectly calculated his sentence by refusing to credit him the time he spent in custody between December 11, 2014 through January 2, 2017, so he has

properly raised his claim in a § 2241 petition. *See Preiser v. Rodriguez,* 411 U.S. 475, 490, 93 S. Ct. 1827 (1973) (challenges to the fact or duration of confinement must be brought in a writ of habeas corpus); *Waletzki v. Keohane,* 13 F.3d 1079, 1080 (7th Cir. 1994); *Romandine v. United States,* 206 F.3d 731, 736 (7th Cir. 2000) (noting that issues related to BOP's sentencing calculations are properly brought in a § 2241 petition).

The Attorney General, through the BOP, is responsible for computing terms of imprisonment for federal prisoners. *United States v. Wilson*, 503 U.S. 329, 333, 112 S. Ct. 1351, 1354 (1992). There are two main steps in making this calculation, as outlined in 18 U.S.C. § 3585: First, under 18 U.S.C. § 3585(a), the BOP must determine the date a sentence commences. Second, under 18 U.S.C. § 3585(b), the BOP must determine the credit an inmate should get for prior custody. Here, the Court finds that the BOP has incorrectly determined the start date of Scott's sentence because Scott was in the primary custody of the federal government as of the date of his sentence. With regards to pre-sentence custody credits, however, Scott's relief is limited by § 3585(b) regardless of the primary custody doctrine.

### A. Determining the Commencement of the Federal Sentence

The Court begins with step one, which requires the BOP to calculate the federal sentence's start date. Pursuant to § 3585(a): "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). However, the BOP's authority is further restricted by the doctrine of primary custody in determining the date a sentence commences. *Pope v. Perdue*, 889 F.3d 410, 415 (7th Cir. 2018), *reh'g denied* (July 30, 2018). Under the doctrine of primary custody, a prisoner's federal sentence only begins to run when he is in the primary custody of the federal

government.  *Id.*  Generally, a prisoner is in the primary jurisdiction of the sovereign that first arrests him—meaning either the state or the federal government—until that sovereign "relinquishes its priority in some way."  *Pope*, 889 F.3d at 415 (quoting *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005)).  A sovereign releases its priority through such actions as releasing the prisoner on bail or parole.  *Loewe v. Cross*, 589 Fed. Appx. 788, 790 (7th Cir. 2014).  However, when a prisoner is "borrowed" through a writ of habeas corpus *ad prosequendum*, the state's primary custodial jurisdiction is not relinquished.  *Jake v. Herschberger*, 173 F.3d 1059, 1061 n. 1 (7th Cir. 1999); *United States v. Lemus Rodriguez*, 495 Fed. Appx. 723, 726 (7th Cir. 2012).  "In the absence of evidence that the transferring sovereign intended to maintain custody, we presume that the sovereign intended to relinquish it. This presumption promotes clarity for inmates, jailers, and courts."  *Pope*, 889 F.3d at 415–16.

Here, Scott's federal sentence was imposed on October 12, 2016, making this date the earliest possible date that his federal sentence could have be deemed to have commenced. However, October 12, 2016, is the date his sentence commenced only if Scott was in *primary* federal custody at the time his sentence was imposed.  Scott was initially arrested by state officials on March 31, 2014.  He was borrowed from state custody on a federal writ of habeas corpus *ad prosequendum* from July 14, 2014 to July 16, 2014.  Accordingly, during this time the record shows that Arkansas maintained primary custody.

However, after the new state charges against Scott were dropped in December 2014, the record becomes less clear.  Scott had not had his six-month revocation hearing in November 2014 for his Arkansas revocation case (emails indicate that this was because he had not been transferred to the Arkansas Department of Corrections).  *See* Resp. Attach. 16 (d/e 7-2 at 60) ("He was revoked back in 2014 but never came into ADC because of the Federal hold and then

*Feds had him in custody.* Finally 1/4/2017 the parole board decided to grant him parole again. This is not the normal procedure. Usually on a 6 month revocation the inmate has to come into ADC to be granted parole again."). So, he had not been considered for re-release on parole by ADC and appeared to still be serving time on his parole-violation. Nonetheless, Arkansas allowed—and in fact requested—that the federal government pick Scott up on the federal detainer on December 11, 2014. *See* Supp. Resp., Attachment 13 (d/e 25-1 at p. 53) ("Fulton Co. called us to pick him up on our detainer on 12/11/14. But he should have gone to ADC?").

Further emails indicate that Arkansas had no intention of taking him back into state custody to serve time on his parole-violation. Rather, the Arkansas authorities assumed it would not be an issue to Scott to run out the clock on his parole while serving his federal sentence. *See See* Supp. Resp., Attachment 13 (d/e 25-1 at p. 53) ("Per John Felts, he can serve his revocation and discharge date out in BOP custody."). Other ADC records further muddy the waters. An ADC document titled "Status Assignment Sheet" states on December 5, 2016, there was an event type called "TE Violator Screening" moving "transfer to ACC Supervision to Detainer." *See* Supp. Resp., Attach. 12 (d/e 25-1 at p. 46). An admission summary sheet also shows that ADC placed Scott on "inactive" status as of July 16, 2015 because "per email from intake inmate is at the Feds." *See* Supp. Resp., Attachment 13 (d/e 25-1 at p. 53). Respondent has not offered any explanation for what these documents mean, but a plausible interpretation would be that Scott was not considered to be in Arkansas custody at the time, at least not by Arkansas authorities.

All of this evidence would indicate that Arkansas intended to relinquish custody. Indeed the only evidence that Arkansas maintained custody is the fact Arkansas failed to issue a parole certificate. Respondent argues that primary custody, however, cannot be relinquished by mistake. Here, of course, the mistake may have been the failure to relinquish custody

unequivocally by issuing the necessary parole certificate.  Nonetheless, Respondent cites to out

of circuit cases to support its argument.  Some of these are quite distinguishable:  In *Jones v.*

*Tews*, No. CV13-7176, 2015 WL 6501515, at *4 (C.D. Cal. Sept. 25, 2015), the district court

held that the U.S. Marshals mistake in designating prisoner for federal prison did not transfer

primary jurisdiction from state to federal authorities.  Importantly, however, he had been

borrowed by state custody pursuant to a writ of habeas corpus *ad prosequendum*, so the state

could certainly not have been seen as relinquishing their primary custody based on the unilateral

actions of the federal authorities.

However, other cases cited by Respondent have similar fact patterns to this one and

might win the day in other circuits.  In *Sanders v. Fed. Bureau of Prisons*, No. 7:09CV00026,

2009 17 WL 1917093, at *3 (W.D. Va. June 30, 2009), aff'd sub nom. *Sanders v. O'Brien*, 333

F. App'x 791 (4th Cir. 2009), the district court found that state officials had mistakenly released

the petitioner pursuant to a federal arrest warrant and the U.S. Marshals Service mistakenly

executed the warrant.  *Id.*  The mistake was quickly realized, and one week later a writ of habeas

corpus *ad prosequendum* was issued to correct the error.  *Id.*  The district court found that the

"state prison officials' accidental release of an inmate to the physical custody of federal

authorities has no effect on the primary jurisdiction which rests with the sovereign that first

arrested that inmate."  *Id.* at *3.  In *Thomas v. Deboo*, No. 2:09cv134, 2010 WL 1440465, at *4

(N.D.W.Va. Mar. 8, 2010), the state of Illinois: "apparently requested that the USMS take

custody of the plaintiff and transfer him to a federal facility. Although the Marshal Service

replied with this request, the BOP was under no obligation to take custody of the petitioner and

maintain such custody."  *Id.*  The court found that the subsequent erroneous designation to BOP

for four months did not commence running of federal sentence where prisoner remained under

primary jurisdiction of state. *Id.*; *See also Reed v. Holinka*, No. 08–3209, 2010 WL 5093646, at *4 (D. Kan. Dec. 8, 2010) ("Although there is no indication that the federal government used a writ of habeas corpus ad prosequendum to obtain custody of petitioner . . . the subsequent conduct of the BOP and the state authorities after petitioner arrived at FCI–Marion indicates that they realized a mistake had been made and intended that the state have primary custody of petitioner."). Notably, all of these cases lack one element that this case does not: the authorities realized the mistaken transfer and took steps to promptly correct the error.

However, regardless of the similarities these cases have to Scott's predicament, the Seventh Circuit's decision in *Pope v. Perdue*, 889 F.3d 410 (7th Cir. 2018), reached a different result and is binding on this court. In *Pope*, the Seventh Circuit implicitly rejected the idea that merely because a transfer may have been mistaken that it cannot relinquish primary custody or that primary custody cannot be transferred if a sentence still must be served. The petitioner in *Pope* had been first arrested by the state of Illinois and subsequently faced state and federal criminal charges. *Id.* at 412. During the pendency of his federal and state proceedings, primary custody remained with the state because he was only brought into federal custody pursuant to a writ of habeas corpus *ad prosequendum*. *Id.* However, shortly after the imposition of his state sentence and two months after the imposition of his federal sentence, the state inexplicably transferred the petitioner to federal custody. *Id.* at 413. He was returned to state custody two hundred and sixty-eight days later to serve his state sentence. *Id.* The Seventh Circuit held that due to the absence of evidence that the state intended to maintain primary custody (other than the fact of the undischarged state sentence), that the state had relinquished primary custody when it transferred the petitioner. "This presumption promotes clarity for inmates, jailers, and courts." *Pope*, 889 F.3d at 415–16.

Here, like *Pope*, the evidence that the state intended to maintain primary custody is meager—the only evidence is the fact that, like in *Pope*, Scott's state sentence had not been discharged yet.  Here, the state notified the federal government that they needed to pick him up on their detainer.  The federal government then arrested him.  True, unlike in *Pope,* Scott did not physically move at all.  He remained in the same county jail the entire duration of his criminal proceedings.  Nonetheless, the record and emails show that if the state had intended to retain primary custody, he would not have stayed at the county jail, he would have been physically transferred to a state prison or possibly been conditionally released.  The Court understands the BOP's confusion and frustration at the state's decision to relinquish primary custody when a state sentence is still pending.  Briefing confirms that this is not the normal process and created unnecessary confusion.  Nonetheless, because "the decision to relinquish primary custody rests solely with the sovereign exercising priority," Arkansas's decision to relinquish custody stands no matter the federal government's belief as to the prudence of such a decision.  *See Pope,* 889 F.3d at 416.  Accordingly, because the Court finds that the federal government had primary custody of Scott starting on December 11, 2014, Scott's federal sentence began the day he was sentenced: October 12, 2016.

## B.  Calculating Presentence Custody Time Credits

Scott, however, is still not entitled to credit for prior custody that was credited towards his state sentence.  This is because primary custody only relates to the determination under 18 U.S.C. § 3585(a) as to the date a sentence begins.  While recalculating his sentence with a start date of October 12, 2016, should give Scott roughly 84 more days of credit towards serving his sentence, it does not address the issue of presentence custody credits.  The BOP's award of presentence custody credits is restricted by 18 U.S.C. § 3585(b):

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

*that has not been credited against another sentence.*

*Id.* (emphasis added).

Here, Scott does not dispute that Arkansas provided him with credits for time spent in custody until his parole was conditionally discharged on January 3, 2017. Had Scott received a parole hearing at the six-month mark as originally scheduled, he may have been granted parole (although we cannot know for sure). Unfortunately, as Scott's counsel has concluded, Scott does not have any recourse in federal court against Arkansas for this delay in holding his hearing because no general federal due process right to state parole exists. *See Swarthout v. Cooke*, 562 U.S. 216, 131 S. Ct. 859, 862, 178 L.Ed.2d 732 (2011) (the federal constitution does not confer a right to be conditionally released before the expiration of a valid sentence); *Proctor v. Arkansas Dep't of Correction*, No. 4:20-CV-00847-JM-JTR, 2021 WL 1230489, at *2 (E.D. Ark. Mar. 11, 2021), *report and recommendation adopted,* No. 4:20-CV-00847-JM-JTR, 2021 WL 1230369 (E.D. Ark. Mar. 31, 2021) (explaining that even if the petitioner was right that Arkansas had failed to give him a timely parole hearing, "it is well established that the Arkansas parole statutes do *not* create a federal constitutional right to a grant of parole"); see also *Broadwater v. Sanders*, 59 F. App'x 112, 114 (6th Cir. 2003) (petitioner was not able to get prior custody credits that had been applied to his state sentence and his "contention that the seventeen-month period of time that he served in federal custody prevented him from being paroled from his state sentence earlier does not compel a different result"). !Moreover, Scott has not presented any compelling

reason how the Court's ruling on primary custody could change the BOP's statutory obligations under 18 U.S.C. § 3585(b).  Contrary to Scott's supplemental briefing, *Pope* does not demand such a result as it only addressed the doctrine of primary custody with regard to its impact on 18 U.S.C. § 3585(a).

Nonetheless, the Court recognizes that with the new understanding that Scott was in primary custody of the federal government beginning on December 11, 2014, the BOP's application of its time credits may change in ways not addressed in the parties' briefing. Accordingly, the Court clarifies that this order does not limit the BOP from applying any necessary time credits pursuant to its own rules.  The Court's Order is instead limited to requiring the BOP to recalculate Scott's sentence as commencing on the date he was sentenced. The Court leaves to the BOP to determine in the first instance how many days of presentence custody credits he may receive under § 3585(b).

### III. CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Scott's § 2241 Petition (d/e 1).  Respondent is ORDERED to recalculate Scott's sentence as commencing on the date of his federal sentencing hearing, October 12, 2016, and apply any applicable presentence time credits.  Pursuant to Petitioner's supplemental briefing (d/e 36), the Court allows Petitioner to WITHDRAW his Motion to Dismiss (d/e 34).  The case is CLOSED. The Clerk is DIRECTED to enter the judgment.


Signed on this 10th day of March 2022.

/s/ Sara Darrow
Sara Darrow
Chief United States District Judge

## NOTICE

Petitioner is advised that this is a final decision ending his case in this Court.  If he wants to appeal, he must file a notice of appeal with this Court within 60 days of the entry of judgment.  *See* Fed. R. App. P. 4(a)(1).  Petitioner need not bring a motion to reconsider this Court's ruling to preserve his appellate rights.  However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b).  Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment.  *See* Fed. R. Civ. P. 59(e).  A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon.  *See* Fed. R. App. P. 4(a)(4)(A)(iv).  A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order.  *See* Fed. R. Civ. P. 60(c)(1).  A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment.  *See* Fed. R. App. P. 4(a)(4)(A)(vi).  The time to file a Rule 59(e) or 60(b) motion cannot be extended.  *See* Fed. R. Civ. P. 6(b)(2).  Because Petitioner is incarcerated pursuant to a federal court judgment and is not proceeding under 28 U.S.C. § 2255, no certificate of appealability is necessary prior to seeking an appeal.